ORDER
GRITT, JUDGE:
An application of claimant, Jake E. Saltsman, for an award under the West Virginia Crime Victims Compensation Act, was filed June 30, 2000. The report of the Claim Investigator, filed January 24, 2001, recommended that no award be granted, to which the claimant timely objected. An Order was issued on March 9, 2001, confirming the Investigator’s recommendation, in response to which the claimant’s request for hearing was filed March 26, 2001. This matter came on for hearing January 17, 2002, the claimant appearing in person and the State of West Virginia by counsel, Joy M. Bolling, Assistant Attorney General.
On or about January 4, 2000, the 25-year-old claimant was assaulted and beaten by at least one and possibly two individuals in Ravenswood, Jackson County. Kenny Henry, a resident of Ravenswood, was initially charged with battery, but the charge was reduced to “fighting in public” to which he pleaded no contest and paid a fine. Mr. Saltsman testified that he was also attacked by Mike Blankenship, his mother’s next-door neighbor. However, he was not charged with any criminal misconduct by the Ravenswood Police due to a lack of evidence indicating that he was involved in the attack.
The incident giving rise to this claim occurred on or about January 4, 2000, at approximately 10:00 a.m. The claimant Jake Saltsman had spent the previous night at his mother’s home at Ashton Lane in Ravenswood. He had driven from Akron, Ohio, to visit his mother and brother. The next morning, Mr. Saltsman got up from bed and decided to walk downtown (Transcript, page 4). He neared the corner of Sand Street and Virginia Street when two men approached him coming from the opposite direction. Mr. Saltsman testified that he could not tell who they were because they wore hats and their heads were down. He stated that as he was turning the corner, one of the two men hit his shoulder and the other quickly grabbed him in a head lock and spun him around (Transcript, page 5). Mr. *409 Saltsman further revealed that one man pinned his arms behind his back so that he could not fight, allowing the other man to repeatedly beat him. One of the men rammed Mr. Saltsman’s head into a car, which he stated may have knocked him out briefly because the next thing he recalled was waking up a few seconds later in someones yard (Transcript, page 5). Mr. Saltsman remembered a lady coming outside her home to check on him. He believed that she called the police, who arrived a few minutes after the altercation was over. Mr. Saltsman was taken to the emergency room at Jackson General Hospital where he was treated for cuts and lacerations to his head and face. He also had a concussion and a nasal fracture. These injuries required follow-up treatment and care. Mr. Saltsman is seeking payment for the medical expenses incurred as a result of this altercation in the amount of $8,000.00. He did not have health insurance coverage at the time of this incident (Transcript, page 9). Although he was registered with a temporary employment service, at the time of this incident he was unemployed. Therefore, Mr. Saltsman is not seeking and cannot recover lost wages.
By Order issued March 9, 2001, this claim was denied based upon the Claim Investigator’s findings that the claimant was guilty of contributory misconduct in that he taunted the offender to fight by using threatening words and placing his hands up in a defensive or aggressive posture. Nothing adduced at the hearing con vinces this Court otherwise.
At the hearing of this matter, Mr. Saltsman testified that he did not know who the two men were who attacked him until after the altercation was over. He stated that he could not see their faces as they were approaching him, because they wore hats and their heads were down (Transcript, page 6). However, Mr. Saltsman made a statement to- the Ravenswood Police Department on January 4, 2000, that clearly contradicts this testimony. He told the investigating officer, T.M. Speece, that as he was starting to cross the street, he knew that the two men approaching him were Kenny Henry and Mike Blankenship. He also indicated in the police report that as he kept walking, the two men started saying things to him such as, “We will get you.” Mr. Saltsman further revealed in the report that Kenny Henry threw his jacket on the fire hydrant, and when Mr. Saltsman put his hands up, Kenny Henry charged him, got him by the neck, and slammed his head into a parked car several times. It is also important to note that the claimant testified at the hearing that he did not know Kenny Henry prior to this incident and that he had never even seen him before (Transcript, page 8). Again, this seems to contradict his statement made to Officer Speece in the police report following the incident.
Testifying on behalf of the respondent was Lieutenant Ronald Crawford of the Ravenswood Police Department. He stated that the night prior to this incident, the Ravenswood Police Department had to send an officer to the Saltsman and Blankenship residences because of a complaint regarding one party revving up a car engine and causing a disturbance (Transcript, page 21). Lieutenant Crawford *410 also testified that all of the officers in the department had been called to disputes between the Blankenships and the Saltsmans at one time or another, over a lengthy period of time (Transcript, page 21). The primary dispute between the two families was over a property line boundary. Lieutenant Crawford had advised the parties to have a survey made and build a fence (Transcript, page 21). Apparent!)', Mr. Blankenship built a fence but someone tore it down. Lieutenant Crawford testified that the claimant was charged and arrested on October 25, 1999, for the destruction of the fence, but he is unaware of the outcome of that charge (Transcript, page 22).
In Lieutenant Crawford’s opinion, the fight at issue was the result of an ongoing feud, and Kenny Henry got involved because he is Mr. Blankenship’s nephew. Officer Speece, who investigated the incident, has since left the department and was not present to testify (Transcript, page 23). Lieutenant Crawford testified from, and relied upon, the police report prepared by Officer Speece (Transcript, page 23). He stated that he has reviewed the report and does not have any knowledge that would contradict the witness statements therein (Transcript, page 24). He also indicated that the report seems to accurately reflect what happened to the best of his knowledge (Transcript, page 24). In his opinion, based upon the report and his knowledge of the feud between the parties, this was a case of mutual combat (Transcript, page 27).
W. Va. Code §14-2A-3-(l) defines “Contributory misconduct” as:
“any conduct of the claimant, or of the victim through whom the claimant claims an award, that is unlawful or intentionally tortious and that, without regard to the conduct’s proximity in time or space to the criminally injurious conduct has causal relationship to the criminally injurious conduct that is the basis of the claim and shall also include the voluntary intoxication of the claimant, either by the consumption of alcohol or the use of any controlled substance when the intoxication has a causal connection or relationship to the injury sustained.”
W.Va. Code §14-2A-14 provides the Court with the discretion to deny or modify an award based upon the contributory misconduct of the claimant or of the victim through whom a claim is made. Therefore, when a claimant’s actions fall without the express wording of contributory misconduct as defined in W. Va. Code §14-2A-3(1), the Court will then look to the purpose and intent of the Act. The Act established a system of compensation for innocent citizens who are victims of crime. While misconduct includes unlawful conduct as a matter of law, “misconduct” may be something less than unlawful conduct, though more than an act in poor taste. Misconduct requires some deviation from the accepted norm or standard of proper behavior. Conduct may be construed as “contributory misconduct” if an ordinary prudent person could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed. In re Trador, CV-97-56 (1997).
*411 In prior claims, where a claimant was the victim of an assault and battery, the Court has denied compensation where the claimant could have avoided injury had he not engaged the other individuals in an exchange. In re Rebrook, CV-90102 (1991), See also: In re Schunn, CV-89-112 (1991), In re Young, CV-96-3 (1997). Furthermore, ,it is the law of. this State that one has a duty to retreat, if such a path is available, before resorting to physical force. In re Schunn, CV-89-112 (1991).
In the present claim, the Court is of the opinion that the claimant did not present sufficient evidence that would cause this Court to change its opinion that the claimant was guilty of contributory misconduct. While this Court is repulsed by the criminal conduct of Kenny Henry, only innocent victims may be granted awards. The evidence adduced at the hearing of this matter established that there was an ongoing feud between Mr. Saltsman and his family and Mr. Blankenship and his family. Kenny Henry is the nephew of Mr. Blankenship, and for unknown reasons he also entered the feud. The record establishes that Mr. Saltsman probably knew who Kenny Henry was prior to the incident and that Mr. Henry was related to Mr. Blankenship. This is established by his statements to the Ravenswood Police Department shortly after the incident. Mr. Saltsman also stated in the police report that just before he was attacked he knew the two men approaching him. According to his statement to the police, the two men began saying derogatory things to him as they got closer to one another. At that point, Mr. Saltsman should have and could have avoided the incident by simply walking away from them. Instead, as the parties approached each other, Mr. Henry threw his jacket down and Mr. Saltsman put his fists up as though he were ready for a fight. Mr. Saltsman had a duty under West Virginia law not to take matters into his own hands. He had a duty to retreat before resorting to physical force if there was a path available. This Court is of the opinion that such a path did exist for the claimant. Although he may not have been the first one to make physical contact, he did put his hands up in a manner as though he were ready to fight. This appears to have been a case of mutual combat for which the Court will not make an award.
The Court is constrained by the evidence to stand by its previous ruling; therefore, this claim must be and the same is hereby denied.